## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION,

              Plaintiff,

      v.

ELON PROPERTY MANAGEMENT
COMPANY, LLC,

              Defendant.

Case No.

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**INJUNCTIVE RELIEF SOUGHT**

### NATURE OF ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, as amended by the Americans with Disabilities Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat 3553 (2008) (codified as amended in scattered sections of 42 U.S.C.), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Charging Party Nakesha Denay Davis and a class of other aggrieved individuals in Florida ("Aggrieved Individuals") who were adversely affected by such practices from at least September 20, 2022 to the present. As alleged in greater detail below, Plaintiff the United States Equal Employment Opportunity Commission ("EEOC") alleges that

Defendant Elon Property Management Company, LLC, ("Elon") discriminated against Ms. Davis by retaliating against her for requesting and utilizing a reasonable accommodation in violation of the ADA. Additionally, the EEOC alleges that since at least September 20, 2022 to the present, Elon's practice of prohibiting employees from returning from a medical leave of absence without a full duty release note from their physician and/or a physician-signed copy of their job description is a qualification standard or other selection criterion that screens out or tends to screen out individuals because of their disabilities in violation of the ADA and has the effect of discrimination on the basis of disability.

## JURISDICTION AND VENUE

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to §107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2.    A substantial part of the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §1391(b).

## PARTIES

3.     The EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. 12117(a), which incorporates by reference 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.     At all relevant times, Elon has continuously been doing business in the State of Florida and has continuously had at least fifteen (15) employees.

5.     At all relevant times, Elon has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 101(5) and 101(7) of the ADA, 42 U.S.C. § 12111(5), (7), which incorporates by reference Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. 2000e-1(b), (g) and (h).

6.     At all relevant times, Elon has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

7.     Elon is or was the employer of Charging Party Nakesha Denay Davis and the Aggrieved Individuals.

## CONDITIONS PRECEDENT

8.     More than thirty days prior to the institution of this lawsuit, Ms. Davis filed a charge of discrimination with the EEOC alleging, among other things, that Elon violated the ADA.

9.     On March 19, 2024, the EEOC issued a Letter of Determination to Elon

3

finding reasonable cause to believe that Elon discriminated against Ms. Davis and a class of employees with disabilities in violation of the ADA.

10.     Prior to initiating this lawsuit, the EEOC attempted to conciliate with Elon to eliminate the unlawful employment practices alleged herein and provide appropriate relief.

11.     By letter dated July 1, 2024, the EEOC issued a Notice of Failure of Conciliation advising Elon that the EEOC was unable to secure from Elon a conciliation agreement acceptable to the EEOC.

12.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

*General Allegations*

13.     Elon is a limited liability company that is headquartered in Lakewood, New Jersey.

14.     Elon manages residential properties in eleven states, including thirty apartment complexes throughout Florida.

15.     Nathan Welder and Sam Moerman are the Presidents of Elon.

16.     Laura Pirtle is the Executive Vice President of Elon.

17.     Hadassah Wurzburger Massin is the Vice President of Human Resources for Elon.

4

*Retaliation Against Nakesha Denay Davis*

18.    Ms. Davis was hired by Elon as an Area/District Manager in September 2020.

19.    As an Area/District Manager, Ms. Davis oversaw eight apartment complexes in Tampa, Florida, and the surrounding area.

20.    Throughout her employment, Ms. Davis reported to Executive Vice President Laura Pirtle.

21.    In her role at Elon, Ms. Davis was responsible for, among other things, training new property managers, reviewing budgets, checking availability for schedules, walking units to make sure they were ready, and walking property exteriors to make sure they had curb appeal.

22.    Prior to March 2023, Ms. Davis never received any written warnings about her job performance.

23.    On or around March 4, 2023, Ms. Davis suffered a stroke. As a result of the stroke, Ms. Davis requested leave as a reasonable accommodation.

24.    Elon granted Ms. Davis's request for leave.

25.    Ms. Davis went on concurrently running short-term disability and Family Medical Leave Act ("FMLA") leave until June 2, 2023.

26.    While Ms. Davis was on leave, the occupancy rates at her properties declined.

27.    On or around June 5, 2023, Ms. Massin called Ms. Davis to inquire about her return to work. Ms. Davis explained that she was supposed to be out of work until her next doctor's appointment, scheduled for June 14, 2024. Ms. Massin responded that Elon could no longer hold Ms. Davis's position and asked Ms. Davis if she wanted to resign. Ms. Davis expressed that she did not want to resign.

28.    Ms. Massin told Ms. Davis that she could only return to work if she submitted a doctor's note indicating that she had no restrictions and a signed copy of Ms. Davis's job description.

29.    Ms. Davis supplied the full duty release note and signed job description to Elon on or around June 7, 2023.

30.    After receiving the full duty release note and signed job description from Ms. Davis's doctor, Elon scheduled Ms. Davis to return to work on Monday, June 12, 2023.

31.    On Monday, June 12, 2023, Ms. Davis's first day back to work, Ms. Pirtle called Ms. Davis and added Ms. Massin on the line. Ms. Pirtle informed Ms. Davis they were going to put her on an Action Plan. The Action Plan was created the same day.

32.    The Action Plan created on June 12, 2023, was presented to Ms. Davis on or about June 14, 2023.

33.    The Action Plan is akin to a written warning/performance

6

improvement plan.

34.  The Action Plan was issued by Elon because Ms. Davis requested and took a leave of absence.

35.  The Action Plan punished Ms. Davis for the deterioration of her properties that occurred while she was on leave.

36.  Upon information and belief, Elon did not issue an Action Plan to the individuals that oversaw and managed Ms. Davis's properties while she was on leave.

37.  The Action Plan laid out occupancy goals for six of the eight properties overseen by Ms. Davis and required an increase within two weeks of Ms. Davis's return to work.

38.  The Action Plan also increased Ms. Davis's property visit, reporting, and training duties from those expected of her prior to her leave.

39.  The Action Plan stated that "[f]ailure to demonstrate improvement in all of the areas listed may result in further disciplinary action up to and including termination of employment."

40.  Ms. Davis refused to sign the Action Plan.

41.  On July 3, 2023, Ms. Pirtle called Ms. Davis and informed her they needed to issue a final counseling, considered a final warning prior to termination.

42.  On July 5, 2023, Ms. Davis took sick leave in response to concerns of

high-blood pressure related to the stress of the treatment she was experiencing upon her return to work.

43.    Ms. Davis returned to work on July 6, 2023, and resigned the same day via email.

44.    Ms. Davis felt compelled to resign because she believed Elon was trying to fire her and felt the additional stress from Elon's disciplinary actions was detrimental to her health.

45.    Ms. Davis engaged in protected activity by requesting and utilizing the accommodation of short-term disability/FMLA leave. In retaliation, Elon placed Ms. Davis on an Action Plan and increased her duties.

46.    Ms. Davis suffered damages because of Elon's retaliatory actions.

*Elon's Medical Leave of Absence Policy*

47.    Elon's Leave of Absence policy provides that "Prior to returning to work after leave for his/her own serious health condition, the employee must provide medical certification of his/her ability to return to work."

48.    In practice, Elon prohibits employees from returning from a medical leave until such time as they can (1) obtain a physician-signed copy of their job description; and (2) obtain a full duty release note from their doctor, without any restrictions or accommodations.

49.    Elon's job descriptions include the following language, which a

physician is required to sign: "I have read this job description, understand it, and certify that my patient is able to perform the essential functions and meet the job requirements of the position."

50.    The job descriptions do not include language allowing that the essential functions of the job can be performed with or without a reasonable accommodation.

51.    The job descriptions do not contain a space for requesting a reasonable accommodation and employees returning from medical leave are not provided with Elon's reasonable accommodations form as part of the return-to-work process.

52.    Employees returning from medical leave who cannot obtain a full duty release note and signed copy of their job description from their doctors are employees who have a physical impairment, a record of impairment, and/or who are regarded as having an impairment.

53.    Employees returning from medical leave who cannot obtain a full duty release note and signed copy of their job description from their doctors are terminated or forced to take additional leave.

54.    As a result, Elon's practices adversely impact employees who have a physical impairment, a record of impairment, and/or who are regarded as having an impairment.

55.     Employees who have a physical impairment, a record of impairment, and/or who are regarded as having an impairment and are subjected to Elon's requirements upon returning from medical leave have suffered damages.

## STATEMENT OF CLAIMS

### Count I: Retaliation in Violation of the ADA

56.     Paragraphs 13 through 46 are incorporated by reference as if fully set forth herein.

57.     Ms. Davis engaged in activity protected by the ADA when she requested and utilized the accommodation of short-term disability/FMLA leave from March 4, 2023, to June 9, 2023, to recover from a stroke.

58.     Elon retaliated against Ms. Davis for requesting and utilizing leave by placing her on an Action Plan on or about June 14, 2023, within days of Ms. Davis's return from leave.

59.     The unlawful practices complained of in paragraphs 13 through 46 were intentional.

60.      Elon acted with malice and/or reckless indifference to Ms. Davis's federally protected rights when it engaged in the unlawful employment practices complained of in paragraphs 13 through 46.

### Count II: Discriminatory Selection Criteria in Violation of 42 U.S.C. § 12112(b)(6)

61.    Paragraphs 47 through 55 are incorporated by reference as if fully set forth herein.

62.    The Aggrieved Individuals are disabled under 42 U.S.C. §12102(1).

63.    The Aggrieved Individuals were qualified to perform the essential functions of their jobs with or without reasonable accommodations.

64.    Since at least September 20, 2022, Elon has required employees returning from a medical leave of absence to supply a full duty release note with no restrictions from their physician and/or a physician-signed job description. This is a 100% healed policy and selection criteria that screened out the Aggrieved Individuals and tended to screen out individuals with disabilities in violation of the ADA.

65.    The 100% healed policy adversely impacted the Aggrieved Individuals because they were terminated, constructively discharged, or forced to take additional leave.

66.    The 100% healed policy is not job related and consistent with business necessity.

67.    The unlawful practices complained of in paragraphs 47 through 55 were intentional.

68.    Elon acted with malice and/or reckless indifference to the Aggrieved

Individual's federally protected rights when it engaged in the unlawful employment practices complained of in paragraphs 47 through 55.

## Count III: Discriminatory Qualification Standards in Violation of 42 U.S.C. § 12112(b)(3)

69.    Paragraphs 47 through 55 are incorporated by reference as if fully set forth herein.

70.    The Aggrieved Individuals are disabled under 42 U.S.C. §12102(1).

71.    The Aggrieved Individuals were qualified to perform the essential functions of their jobs with or without reasonable accommodations.

72.    Since at least September 20, 2022, Elon has required employees returning from a medical leave of absence to supply a full duty release note with no restrictions from their physician and/or a physician-signed job description. Having no restrictions is a standard or criteria that had the effect of discrimination on the basis of disability in violation of the ADA.

73.    The "no restrictions" standard or criteria discriminated against the Aggrieved Individuals because they were terminated, constructively discharged, or forced to take additional leave.

74.    The unlawful practices complained of in paragraphs 47 through 55 were intentional.

75.    Elon acted with malice and/or reckless indifference to the Aggrieved Individual's federally protected rights when it engaged in the unlawful

employment practices complained of in paragraphs 47 through 55.

## PRAYER FOR RELIEF

Wherefore, EEOC respectfully requests that this Court:

A.      Declare that Elon violated the ADA by retaliating against Charging Party Nakesha Denay Davis for engaging in statutorily protected activity;

B.      Grant a permanent injunction enjoining Elon, its officers, agents, servants, employees, subsidiaries, attorneys, and all persons acting in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of disability;

C.      Order Elon to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices;

D.      Order Elon to institute a training program for all human resources personnel and supervisory employees to ensure compliance with federal laws and company policies on nondiscrimination;

E.      Order Elon to make whole Charging Party Nakesha Denay Davis by providing back pay with prejudgment interest, in amounts to be determined at trial, and all other affirmative relief necessary to eradicate the effects of these unlawful employment practices;

F.      Order Elon to make whole Charging Party Nakesha Denay Davis by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above, in amounts to be determined at trial;

G.      Order Elon to make whole Charging Party Nakesha Denay Davis by providing for past and future nonpecuniary losses resulting from the unlawful practices complained above, including, but not limited to, emotional and/or physical pain, suffering and mental anguish, humiliation, loss of enjoyment oof life, and the like, in amounts to be determined at trial;

H.      Order Elon to pay Charging Party Nakesha Denay Davis punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

I.      Order Elon to make whole the Aggrieved Individuals by providing appropriate backpay and prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including reinstatement;

J.      Order Elon to make whole the Aggrieved Individuals by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above, in amounts to be determined at trial;

K.      Order Elon to make whole the Aggrieved Individuals by providing

for past and future nonpecuniary losses resulting from the unlawful practices complained above, including, but not limited to, emotional and/or physical pain, suffering and mental anguish, humiliation, loss of enjoyment oof life, and the like, in amounts to be determined at trial;

L.      Order Elon to pay the Aggrieved Individuals punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

M.      Grant such further relief as the Court deems necessary and proper in the public interest; and

N.      Award the EEOC its costs of this action.

## <u>JURY TRIAL DEMAND</u>

The EEOC requests a jury trial on all questions of fact raised by its complaint.


Date: December 20, 2024                Respectfully submitted,


                                       **U.S. EQUAL EMPLOYMENT
                                       OPPORTUNITY COMMISSION**


                                       KARLA GILBRIDE
                                       General Counsel
                                       CHRISTOPHER LAGE
                                       Deputy General Counsel
                                       GWENDOLYN YOUNG REAMS

Associate General Counsel
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, DC 20507

KRISTEN M. FOSLID
Regional Attorney
Florida Bar No. 0688681
Kristen.Foslid@eeoc.gov
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
T: (786)648-5835
F: (305) 808-1835


/s/ *Jennifer Rex*
JENNIFER REX
Florida Bar No. 1041094
Jen.Rex@eeoc.gov
Tampa Field Office
501 E. Polk Street, 10th Floor
Tampa, Florida 33602
T: (813) 710-9371
F: (813) 228-2841

*Counsel for Plaintiff*, EEOC